UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                                  Case Number 09-20632

v.                                                      Honorable David M. Lawson

JOHN NELSON PRESTON,

        Defendant.
_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant John Preston has filed a motion asking the Court to reduce his prison sentence to time served under the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Preston argues that his release is justified by extraordinary and compelling circumstances, consisting of his medical conditions, including asthma, hypertension, and obesity, which he contends increase his risk of complications from a possible infection with the COVID-19 disease. Because Preston has not shown that "extraordinary and compelling reasons warrant such a reduction," as section 3582(c)(1)(A)(i) requires, his motion to reduce his sentence will be denied.

I.

Defendant John Nelson Preston pleaded guilty to one count of sexual exploitation of children, 18 U.S.C. § 2251(a). He was sentenced to a mandatory minimum term of 180 months in prison. The defendant presently is confined by the Bureau of Prisons at Milan FCI, in Milan, Michigan, which is a low security facility that houses around 1,320 inmates. Public records of the BOP indicate that the defendant is scheduled to be released from prison on September 30, 2022. Preston is 44 years old.

On July 29, 2020, Preston filed a *pro se* motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. The Court appointed counsel and set deadlines for the filing of supplemental briefing by counsel and a response by the government. In his motion, Preston contends that he is qualified for release based on his medical conditions which he says include hypertension, asthma, and obesity. The government has filed a response opposing the motion on the merits.

The most recent data disclosed by the BOP indicates that there are no active coronavirus cases among inmates and one among staff at the Milan facility, and 87 inmates and 55 staff who previously were diagnosed with the disease but now have recovered. Reports indicate that three inmates have died. *See* https://www.bop.gov/coronavirus/.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has

'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Preston relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, *first*, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," *second*, if "extraordinary and compelling reasons warrant such a reduction," and *third*, if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").

Addressing the second requirement, Preston argues that compassionate release is warranted based on his medical conditions, including hypertension, asthma, and obesity. He argues that those conditions increase the risk to his health posed by the ongoing coronavirus pandemic. He also asserts that his risk of recidivism is low, and he has availed himself of prison programs for improving his education and job prospects; however, he points out that he has not taken sex offender counseling because no such programs are offered at Milan. Notably, neither the motion nor the opposition briefing included any medical records for the defendant. However, the parties subsequently submitted joint exhibits comprising medical records at the Court's direction.

The government concedes that the request for release has been administratively exhausted. It asserts, however, that there are no indications in the defendant's medical records that he has asthma, or that his hypertension is not well controlled by the medication that he takes daily. The government also argues that hypertension is classified by the most recent CDC guidance only as a

factor that "might" increase risk. However, the government concedes that the defendant's obesity alone (based on its calculation of his BMI at 36.3) is a recognized serious risk factor that is sufficient to establish extraordinary and compelling circumstances. But the government argues that, even if he does qualify, the defendant should not be released because the seriousness of his crime and history of prior convictions in state court for soliciting sex with minors establish the risk that he poses to the community, and completion of the mandatory minimum term in prison is needed to promote adequate deterrence and respect for the law.

Because the government concedes that the request for release has been properly exhausted, that threshold requirement for relief has been satisfied. However, the defendant has not advanced sufficiently compelling circumstances to warrant a sentence reduction based on his diagnosed medical conditions, even though one of his observed health factors (obesity) does comprise a recognized risk factor for coronavirus infection. Preston's showing on the second element that he must establish to justify compassionate release — extraordinary and compelling reasons — is insufficient, so it is unnecessary to discuss the other elements. His health concerns are understandable, but insufficient to warrant immediate release.

It is widely recognized and publicly acknowledged that persons with certain medical conditions face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16). The defendant's age (44) does not put him in a high-risk category, but he correctly points out that other pertinent recognized risk factors

include obesity and asthma. *See* CDC, Risk Factors: People With Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

The most recent medical records available noted the defendant's height as 5' 6" and his weight at 225 pounds; those figures correspond to a body mass index (BMI) of 36.3, well beyond the threshold of 30.0 recognized by the CDC as a serious risk factor. Medical Report dated Mar. 2, 2020, ECF No. 57-1, PageID.403. The government does not dispute, and federal courts regularly have held, that obesity poses a sufficient medical risk to establish extreme and compelling circumstances weighing in favor of release, at least where the inmate is confined at a facility with an active COVID-19 outbreak. *United States v. Olawoye*, No. 15-00172, 2020 WL 4559816, at *4 (D. Or. Aug. 7, 2020) ("Even without the presence of other health conditions, obesity alone is the 'most significant risk factor, after only older age, for being hospitalized with Covid-19.' Further, the CDC has noted that, regardless of age, 'having obesity, defined as a [BMI] of 30 or above, increases . . . risk of serve illness from COVID-19.' Defendant has a body mass index of 31.9, which is classified as obese." (quoting Roni Caryn Rabin, Obesity Linked to Severe Coronavirus Disease, Especially for Younger Patients, The New York Times (Apr. 17, 2020) https://www.nytimes.com/2020/04/16/health/coronavirus-obesityhigher-risk.html; CDC Risk Factors, *supra*).

The recent medical notes also indicate an elevated blood pressure reading of 135/95, despite the prescription of two medications to control the defendant's hypertension, which he reported taking as directed. Medical Report dated Mar. 2, 2020, ECF No. 57-1, PageID.403. Nevertheless, the exam notes also characterized the defendant's hypertension as "stable." *Id.* at PageID.405. The CDC states that individuals with hypertension "*might*" be at an increased risk for

severe illness from COVID-19." CDC Risk Factors, *supra* (emphasis added). Drilling down, though, that condition is grouped with "serious heart conditions" that predispose a person to higher risks of complications. Also included are "heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension." *Ibid.* Although the CDC recognizes "pulmonary hypertension" as a serious heart condition that may put people at a higher risk of severe COVID-19-related complications, federal courts have held that essential or systemic hypertension, in contrast with a more serious specific diagnosis of pulmonary hypertension, does not constitute a recognized serious risk factor for complications from a coronavirus infection. *E.g.*, *United States v. Allen*, No. 15-00139, 2020 WL 5573820, at *5 (M.D. Tenn. Sept. 17, 2020) ("Defendant's diagnosis of high blood pressure, which Defendant's medical records do not indicate is a specific, or otherwise serious form of high blood pressure, does not constitute an extraordinary and compelling reason for compassionate release. This is especially true because Defendant does not allege that the BOP facility in which he is incarcerated is not adequately managing his condition, and Defendant's medical records indicate that his condition is in fact being managed with medication while he is incarcerated.") (collecting cases).

Finally, the defendant's assertion that he is at risk due to asthma is not supported by the available medical records. The only apparent reference to any diagnosis of asthma are notes from May 2019 indicating that the defendant reported a "childhood history of asthma." Medical Report dated May 16, 2019, ECF No. 57, PageID.345. But the only current diagnosis of respiratory illness noted at that time was "bronchitis," for which an inhaler was prescribed. Bronchitis is not among the medical conditions recognized by the CDC as posing an elevated risk for complications from a coronavirus infection, and nothing in the medical reports indicates that any asthma condition that the defendant had or has qualifies as moderate or severe and persistent, which are the criteria for

asthma diagnoses recognized by the CDC as triggering an elevated risk. *See* CDC Risk Factors, *supra*.

Moreover, another highly pertinent consideration is the low probability that the defendant may be exposed to the coronavirus in his present situation. Recent reports indicate that the probability of infection at Milan, although previously quite high, now has declined significantly, with the prison now having no active cases among inmates and only one among staff. Certainly, the government's position that the defendant is at little or no risk is less reassuring, considering the BOP's admitted failure to implement any comprehensive prophylactic testing program, which calls into doubt the figures that it has reported. *See Wilson*, 961 F.3d at 849 (Cole, J., concurring) (observing that in the absence of any program of comprehensive prophylactic testing, reports of low infection rates are questionable at best); *see also United States v. Campbell*, No. 03-4020, 2020 WL 3491569, at *9 (N.D. Iowa June 26, 2020) (same). Nevertheless, the most recent information indicates that the defendant's probability of infection is as low as it would be in a home setting, and perhaps lower considering that the measures taken by the BOP apparently have halted the spread of the virus among inmates at Milan, despite the recent acceleration of the pandemic among the public at large, including in Michigan, where daily case counts are trending among the highest levels observed during the pandemic. *See* Coronavirus Statistics: Michigan, https://www.worldometers.info/coronavirus/usa/michigan/.

On similar facts, the Court has denied motions for compassionate release by inmates with obesity and ordinary hypertension as their only potential risk factors who were housed at facilities with no active coronavirus infections among inmates. *United States v. Ball*, No. 14-20117, 2020 WL 4816197, at *6 (E.D. Mich. Aug. 19, 2020). There are no distinguishing facts in this case that

set it apart from *Ball*, where the Court concluded that extraordinary and compelling circumstances had not been demonstrated.

None of this is meant to minimize the seriousness of the coronavirus pandemic or the alarming rapidity of its spread within federal prisons. But the pandemic is a global phenomenon and some risk is inherent no matter where Preston resides, either at home or in prison. He has not put forth any convincing evidence to demonstrate that he is at an especially elevated risk of harm in the present situation of confinement. And Michigan has a significant number of confirmed COVID-19 cases. Preston has not demonstrated "extraordinary and compelling reasons" to reduce his sentence to time served.

### III.

Preston has exhausted his administrative remedies, but he has not demonstrated that compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 39) is **DENIED**.

                                                  s/David M. Lawson
                                                  DAVID M. LAWSON
                                                  United States District Judge

Dated: September 23, 2020